IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 21–cv–01808–CMA–MDB

REBECCA JANEZICH,

    Plaintiff,

v.

WALMART, INC.,

    Defendant.

---

## ORDER

---

This matter is before the Court on Defendant Walmart, Inc.'s "Motion to Exclude Plaintiff's Retained Expert Jerry Birnbach" (["Motion"] Doc. No. 44.) Plaintiff has responded to the Motion and Defendant has replied. (["Response"] Doc. No. 46; ["Reply"], Doc. No. 48.) For the reasons described herein, the Motion is **GRANTED.**

### BACKGROUND

This is a premises liability action in which Plaintiff, Rebecca Janezich, alleges that on or around June 22, 2019, she and her daughter were in the process of leaving Defendant's store #1019 in Canon City, Colorado, when they came upon floor mats that were "saturated with water, and the concrete floor between the mat and the exit was exposed, damaged, and wet." (Doc. No. 7 at ¶¶ 2, 12, 13.) Plaintiff alleges that her "shoes became wet as she walked across the mat," and when she "stepped onto the concrete floor, she immediately slipped as a result of the

uncovered, wet, and damaged floor." (*Id.* at ¶ 14.) Plaintiff further alleges that she "fell . . . struck her shoulder and head against the door and then struck her head and knee on the floor." (*Id.* ¶ 15.) Plaintiff contends that the "condition of the floor constituted a dangerous condition, activity, and circumstance existing on the Defendant's property about which the Defendant and its employees actually knew, or, as a business and persons using reasonable care, should have known." (*Id.* at ¶ 16.) Plaintiff brings one premises liability claim and one negligence claim. (*Id.* at ¶¶ 27-52.)

In support of her claims, Plaintiff offers the opinions of Jerry Birnbach, described as "an expert based on the education, knowledge, and training specified in his CV as a Store Designed [sic], a Director of Retained Maintenance and Retail Safety Expert." (Doc. No. 44-1 at 1.) His report relies heavily on video footage of the incident and Defendant's internal policies and procedures. (*Id.*)

Defendant seeks to exclude Mr. Birnbach's opinions and preclude him from testifying at trial because: 1) Mr. Birnbach's opinions are based on his review of security camera footage and Defendant's policies and procedures, but they do not apply any scientific or specialized methodology; 2) Mr. Birnbach's opinions are not based on any disclosed industry standard and are instead Mr. Birnbach's own subjective opinion; 3) Mr. Birnbach is not qualified as an expert in retail store safety; 4) many of Mr. Birnbach's opinions are not reliable because he failed to review the incident report, deposition transcripts, speak to any witnesses, or conduct any investigation of the store vestibule; 5) Mr. Birnbach does not employ reliable methodology and admits that many of his opinions are speculative; and 6) Mr. Birnbach's opinions are not admissible under the standards set forth in Fed. R. Evid. 702 and 403. (*See generally* Doc. Nos.

2

44, 48.) Defendant also argues that "Mr. Birnbach's opinions should be stricken under Fed. R. Civ. P. 37 due to his failure to disclose the basis for his claimed industry standards as required by Fed. R. Civ. P. 26." (Doc. No. 44 at 3.)

Plaintiff argues that "Mr. Birnbach's experience, background, and education qualify him to testify about Defendant's failure to comply with industry safety standards pertaining to incidents similar to the one at issue in this case." (Doc. No. 46 at 2.) Plaintiff further argues that Mr. Birnbach's "detailed explanations of the video screen shots" are appropriate expert testimony because "[t]he applicable retail store safety standards are matters of specialized knowledge rather than the common knowledge and experience of a lay person." (*Id.* at 12.) In other words, "Mr. Birnbach's opinion is required to assist the jury in determining whether Defendant failed to comply with industry safety standards as depicted in the security video footage." (*Id.*) And, with respect to Defendant's policies and procedures, Plaintiff argues that "[i]t is not common knowledge within a lay person as to whether a store incorporated industry standards into its own internal policies. Nor are the industry safety standards common knowledge. Therefore, Mr. Birnbach's testimony could properly assist the jury by using his experience to assess whether Defendant complied with industry safety standards, as set forth in its own internal policies, at the time of the incident." (Doc. No. 46 at 15.)

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

3

methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993).

The proponent of the expert testimony must show by a preponderance of the evidence that the expert's testimony is admissible. *See, e.g.*, *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). In assessing admissibility, courts consider three things: 1) whether the expert is qualified by specialized knowledge, skill, experience, training, or education to testify on the subject matter of his or her testimony; 2) whether the testimony is based on sufficient facts or data, is the product of reliable principles and methods, and is the product of the reliable application of these principles and methods to the facts of the case, and 3) whether the proffered expert testimony is relevant and helpful to the jury in its deliberations. *See Cook v. Rockwell Int'l Corp.*, 580 F.Supp.2d 1071, 1085-86 (D. Colo. 2006); *Aragon v. Lowe's Home Ctrs. LLC*, No. 1:21-cv-03213-SKC, 2023 WL 2813212, *1 (D. Colo. Apr. 6, 2023).

In applying Rule 702, a court performs an important gatekeeping function. *Macsenti v. Becker*, 237 F.3d 1223, 1230-34 (10th Cir. 2001). However, courts exercise caution in performing this gatekeeping role because "Rule 702 mandates a liberal standard" for the admissibility of expert testimony. *Cook*, 580 F.Supp.2d at 1082.  "Doubts about whether an expert's testimony will be useful 'should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough ... to ignore what is unhelpful in its deliberations.'" *Robinson v. Mo. Pac. R.R Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (citations omitted). That said, the decision to admit or exclude expert testimony is committed to the sound discretion of the district court. *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 603 (10th Cir. 1997).

Additionally, even if admissible under Rule 702, expert testimony may still be excluded under Federal Rule of Evidence 403 if its "probative value is substantially outweighed by [the] danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercise more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal quotations omitted).

## ANALYSIS

The allegations in this case are relatively straightforward: Plaintiff and her daughter were leaving Defendant's store when Plaintiff walked across a mat "saturated with water," and as she stepped onto the concrete floor between the wet mat and the exit, she "immediately slipped as a result of the uncovered, wet, and damaged floor." (Doc. No. 7 at ¶¶ 9-14.) Plaintiff alleges that Defendant knew or should have known about this dangerous condition, and that Defendant caused the incident. (*Id.* at ¶¶ 16, 21.) Said another way, Plaintiff's negligence and premises liability claims are based on a single slip-and-fall incident involving a wet floor mat at Defendant's store.

Of the many arguments Defendant makes in support of its Motion, the Court finds two most persuasive. First, that some of Mr. Birnbach's opinions constitute legal conclusions. Second, that his opinions do not apply specialized knowledge that would be helpful to the jury. The Court addresses each in turn.

*Legal Conclusions*

Mr. Birnbach opines that "the lack of a Walmart staff adequate vestibule floor inspection and required inclement weather prevention and cure requirements *was the cause of* the Janezich incident." (Doc. No. 44-3 at 1 (emphasis added).) He includes other similar opinions, such as "[t]his failure *was a cause of* the Janzeich incident," and "[t]his reckless, major Walmart safety violation *led to the cause of* the Janezich incident due to not cure applied at the time." (*Id.* at 5 (emphasis added).)

"Testimony . . . is not objectionable merely because it embraces an ultimate issue to be decided by the fact finder, but an expert witness cannot tell the jury what result to each or form conclusion for the jurors that they are competent to reach on their own[.]" *People v. Baker*, 487 P.3d 1194 (Colo. App. 2019); *see also Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir. 1987) (noting that opinions embracing legal standards may be excluded). The line between permissible expert opinion on facts, and impermissible expert opinion on legal conclusions, is not always obvious. *See United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). But generally speaking, "opinions that aide the jury in reaching a verdict are admissible; opinions that tell the jury what verdict to reach are not." *Ashcraft v. Walmart, Inc.*, No. 18-CV-151-F, 2019 WL 13222756, *9 (D. Wyo. Sep. 24, 2019) (quoting *Specht v. Jensen*, 852 F.2d 805, 809 (10th Cir. 1988)).

Here, Mr. Birnbach impermissibly seeks to tell the jury precisely what caused the incident. If allowed at trial, Mr. Birnbach's testimony would have the effect of telling a jury to conclude that the causation element is satisfied. This is not allowed. *Rehberg v. City of Pueblo*, 281 F.R.D. 620, 624 (D. Colo. 2012). An expert can opine, for example, that the industry rejects

certain practices because they are unsafe, but opining that Defendant's conduct actually caused the incident is the equivalent of telling the jury what verdict to reach. Having engaged in a "common sense inquiry" to assess the nature of these opinions, the Court concludes that Mr. Birnbach's causation opinions are legal conclusions that must be precluded. *Id.*; *United States v. Garcia*, 635 F.3d 472, 477 (10th Cir. 2011).

***Specialized Knowledge that Helps the Trier of Fact***

As to the remaining opinions in Mr. Birnbach's report, the Court finds they are largely based on his review of the video footage (which jurors can review for themselves), and Defendant's safety manual (which jurors can apply on their own). Thus, Mr. Birnbach's opinions would not assist the jury and should be excluded.

Plaintiff characterizes Mr. Birnbach's opinions as opinions about industry standards that are "incorporated into Defendant's internal policies[.]" (Doc. No. 46 at 13.) But at best, Mr. Birnbach pays lip service to the idea of industry standards.[1] Nowhere in his report does he articulate specific standards, describe the source of those standards, or explain how certain standards apply to the facts of this case. Instead, Mr. Birnbach spends a considerable portion of

---

[1] In his report, Mr. Birnbach makes the following statement (or perhaps it is a heading): "The violations by Walmart, Store Management, and Store Staff personnel to comply with *Industry Standards* include…" (Doc. No. 44-3 at 3 (emphasis added).) However, it seems to be a stray statement that is not tethered to an actual opinion about, or explanation of, industry standards. (*Id.*) Perhaps recognizing the gap, Plaintiff's Response relies on Mr. Birnbach's deposition testimony. However, as Defendant argues, that testimony does not contain a source of industry standards, or explain how those standards and Mr. Birnbach's experience is reliably applied to the facts of this case. (Doc. No. 48 at 8.) At best, Mr. Birnbach testified that he's "vastly familiar" with industry standards, but his opinions focus on Defendant's own policies and procedures, not industry standards. (*See generally* Doc. No. 46 at 12-14; Doc. No. 44-1.)

his report describing what he sees in the video and explaining why it violates Defendant's own policies and procedures. But a layperson can review the safety manual, hear from witnesses, examine the video footage, determine what happened, and decide whether Defendant violated its own policies and procedures. Moreover, the policies Defendant sets for itself could be more rigorous than industry standard. (*See* Doc. No. 44-4 at 34:13-17 (Mr. Birnbach testifying that Walmart's manual exceeds most retailer's requirements).)

Still, in opposing the Motion, Plaintiff offers cases where Mr. Birnbach's opinions were permitted. Those cases are not persuasive. For example, one case cited by Plaintiff, *Hawley v. Hannaford Bros. Co. LLC*, No. 2:16-cv-00249, 2018 WL 3647202 (D. Vt. Aug. 1, 2018), involved a tuna fish display. The plaintiff backed into a tuna fish display while checking her shopping list, and the issue was whether certain hooks used in that display constituted a dangerous condition. *Id*. at *5. The court allowed Mr. Birnbach to testify about the hooks used in the display, the way they were used, and whether the use of hooks constituted a hidden hazard. *Id.* His testimony was based on his extensive experience with store displays, a subject that is presumably beyond the layperson's common knowledge. *Id.* at *4.

Similarly, in *Tharpe v. Georgia CVS Pharmacy, LLC*, No. 1:21-CV-01085-JPB, 2023 WL 2160850 (N.D. Ga. Feb. 21, 2023), the question was whether a gift card display was unsafe. In that case, a gift card display fell over and hit the plaintiff, and the court found Mr. Birnbach's experience allowed him to render an opinion that the defendant failed to conduct certain "bump tests" which would have revealed the display's instability. *Id*. at *6.

But this case does not involve store displays, nor does it involve intricate designs, industry tests, or anything else that is beyond a juror's common knowledge. The incident at issue

8

here is more like the slip and fall incident in *Ashcraft v. Walmart, Inc.*, No. 18-CV-151-F, 2019 WL 13222756 (D. Wyom. Sept. 24, 2019). There, "Mr. Birnbach's report [was] a compilation of still frames from the video footage of the incident with Mr. Birnbach's opinion as to what is occurring in each frame." *Id.* at *6. The court excluded Mr. Birnbach's opinions, finding an "expert's testimony must do more than construct a factual narrative." *Id.* at *6-7.

Similarly, in *Cook v. Wal-Mart Stores East, LP*, No. 1:19CV00031, 2020 WL 7481781 (W.D. Va. Dec. 18, 2020), the plaintiff slipped on clear liquid detergent. In support of her claim, the plaintiff offered Mr. Birnbach but the court found his opinions were "based primarily on the security camera footage, along with some deposition testimony and Wal-Mart documents." *Id.* at *2. The court excluded "the testimony because 'it concern[ed] matters within the everyday knowledge and experience of a lay juror.'" *Id.* at *3 (quoting *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993)). The *Cook* court stated:

> a jury would be capable of reviewing the surveillance video and deciding for itself what happened. This case does not involve complicated technical facts or scientific evidence. Furthermore, the jury may not consider Wal-Mart's internal policies and procedures in determining the standards of care. . . . Birnbach's opinions regarding Wal-Mart's policies and procedures, therefore, would not aide the jury in resolving disputed facts.

*Id.* (internal quotations and citations omitted).

This Court finds the same is true here. At best, Mr. Birnbach's testimony about Defendant's failure to adhere to its own policies would be unhelpful and unnecessary. Mr. Birnbach simply concludes what a layperson is capable of concluding for themselves. At worst, however, Mr. Birnbach's opinions could waste valuable trial time, be duplicative, prejudicial, and confusing to a jury. *See* Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595. As currently set forth

9

in his report, Mr. Birnbach's opinions include brief references to "industry standard" and "general customs," without identifying—much less defining—those terms or explaining how those standards apply to the facts at issue. This could mislead a juror into thinking that a violation of Defendant's own policies—which is what Mr. Birnbach spends most of his time discussing—is the equivalent of a violation of industry standard.

The Court is mindful of the liberal standard applied to the admissibility of expert testimony, but it also takes its gatekeeper role seriously. Here, Mr. Birnbach's experience is not useful like it was in *Hawley* and *Tharpe*, for example, because this case does not concern displays, designs, and tests beyond a layperson's ordinary knowledge. This case involves a wet mat, and "a lay person would surely be capable of forming judgments regarding the matters implicated in this slip-and-fall case." *Aragon*, 2023 WL 2813212 at *2. Because Mr. Birnbach's opinions—including his opinion that Plaintiff's method of exiting the store was normal—do not require specialized knowledge and are opinions a layperson can form by reviewing the video footage, listening to witnesses, and reviewing the Defendant's safety manual, the Court finds Mr. Birnbach's opinions would not be helpful to a jury and do not satisfy the Rule 702 standard.

In the alternative, Mr. Birnbach's opinions should be excluded under Rule 403 because the relative utility of his opinions is substantially outweighed by the danger of unfair prejudice, confusion, waste of time, and cumulative nature of the evidence and argument. Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595. In light of this conclusion, the Court need not address Defendant's remaining arguments, though several of them are also persuasive.

10

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT**:

Defendant Walmart, Inc.'s "Motion to Exclude Plaintiff's Retained Expert Jerry Birnbach" (Doc. No. 44) is **GRANTED**.

DATED: April 26, 2023.

BY THE COURT:

Maritza Dominguez Braswell
United States Magistrate Judge

11